Our first case today is Arlene James versus New Jersey State Police. Mr. Freeman. Thank you, Your Honors. I respectfully request to preserve three minutes of my time for rebuttal. Granted. Thank you. This court should grant qualified immunity to Noah Bartelt because there was neither controlling precedent nor a robust consensus of persuasive authority on May 25, 2011, that would put an officer in his position on notice that his use of force was excessive. The specific circumstances that Bartelt was facing that evening was an individual who, for the past day, had been engaged in an escalating sequence of erratic, violent, and criminal conduct. Bartelt knew that Stevens had obtained a restraining order against Gibbons, that Gibbons had violated that order by returning to her house, arguing with her while he was waving a gun in his hand. Bartelt learned from Gibbons' mother that he had stopped taking his medication. Bartelt pulled up alongside Gibbons in a residential neighborhood in an attempt to talk to him. Gibbons responded by stating, stay away from me. When Bartelt pulled his car over, Gibbons responded by pulling out a gun in his left hand and pointing it to his own head and stated again, stay away from me. Gibbons refused two successive lawful commands to drop the gun. Bartelt stood only 7 to 15 yards away. Based on the totality of circumstances, Bartelt had reasons to believe that Gibbons posed an immediate threat of death or serious bodily harm. The law does not require an officer in a tense and dangerous situation to wait until the moment the suspect uses a deadly weapon to act to stop the suspect. Does he have to wait until the suspect points the deadly weapon at himself? Because the facts seem to suggest that Gibbons was only pointing the gun at himself during the incident, is that right? Well, it's more than just pointing the gun at himself. Bartelt knew of his prior erratic behavior. Bartelt also knew of what happened when he went to Angel Stevens' house where he exhibited a willingness to use the gun while he was waving it around in an argument with her. Bartelt also knew that he had violated the restraining order within 24 hours of the restraining order had been issued. So it's not simply a matter of his possession of a gun, it's the totality of circumstances that was known to Bartelt at the time that caused him to reasonably believe that Gibbons posed an immediate threat of death or serious bodily harm. So to allow Bartelt to continue standing there under the circumstances of this case, waiting to see what Gibbons decides to do next with the gun would be unreasonable. This is not a case where he was just simply armed with a gun and Bartelt just came upon him while he had the gun already pointed to his head. Do we have jurisdiction to determine whether he acted reasonably? Didn't the Supreme Court in Johnson v. Jones say that that's a factual determination that's not before us at this stage of these proceedings? Well, there is no dispute that he was in possession of a gun. There is no dispute that he went to his girlfriend's house, got into an argument with her and was waving the gun around. There is no dispute that Bartelt was aware that he had stopped taking his medication and there is no dispute as to what happened at the scene. Right. There is no dispute about those things, but there are some disputed facts here. My question is, do we have jurisdiction to resolve the disputed facts now? Well, yes, I think you do, Your Honor, because those disputes are not genuine disputes that would change the outcome of this case. Well, that means they're immaterial. That doesn't mean we have jurisdiction over them, right? That is correct. But this Court can also decide this case without making a determination on the Fourth Amendment, on the Fourth Amendment issue, simply on the clearly established prong of qualified immunity. We still need some facts to evaluate the clearly established prong. We can't just evaluate the clearly established prong in the abstract. We need some degree of fact, and so what you're saying is that any of the facts needed to resolve the clearly established prong are not in dispute? Yes, I do believe that the facts that are not in dispute would permit this Court to decide the clearly established prong. There is no controlling precedent or robust consensus of persuasive authority that squarely governs Trooper Bartelt's conduct under the circumstances of this case. It really depends on what level of generality his conduct is defined at. If it's defined at a very general level of generality, then it seems that, yes, there is case law that suggests that. If we narrow it down to these specific instances, then your point is more well taken, at least as of the date of this incident. Your Honor, it is correct, and the Supreme Court has specifically instructed the circuits that the general Ghana language that was used at the District Court should not be used because an inquiry should be made within the specific context of the case. This case has unique facts, and the general Ghana language should not be used. But doesn't that double into Judge Hardiman's question of if we're going to go into more specific facts, don't we have to evaluate whether those facts are in dispute or not? Because if you want a more specific articulation, then you need facts that are clearly not in genuine – material facts that are not in genuine dispute at the time in order to get that formulation. So I guess the question is, is your formulation based on material facts – formulation of the clearly established prong based on material facts that are not in dispute? Yes, it is, Your Honor. Based on what Bartelt knew when deadly force was used that are not disputed, there is – the facts that are – the material facts that are not in dispute would permit this court to make – to decide whether the law was clearly established. So maybe the closest case is Bennett against Murphy, which again involved a suicidal suspect who was armed and refused to drop his weapon, and the police shot him, and in that case we said that was a constitutional violation. That is correct. Why isn't that this case? Well, in that case, for three reasons Bennett would not be controlling here. First, it was an unpublished decision. Secondly, the court decided in that case that the officer who used deadly force did so for no reason other than the fact that he was armed with a gun. And that's it. The standoff in Bennett had been ongoing for over an hour without the suspect threatening anyone, and the officer did not have any reason to believe that he posed an immediate threat when deadly force was used. Based on those circumstances, the court denied qualified immunity, and there were also factual disputes from other witnesses in that case that served as one of the bases that qualified immunity was not granted. In this case, there is no dispute regarding the officer's version of the event that happened at the scene. There also is no dispute regarding what happened at the home of his girlfriend. In addition to that, the dispute in Bennett had been ongoing for almost an hour. The officers had almost an hour to assess the threat in that case. In this case, Trooper Bartelt only had seconds to make a judgment on whether deadly force was appropriate. And again, there was no controlling precedent that governed his conduct on the day that he used deadly force. So we think that the factual differences in this case would not make Bennett controlling. Does it also matter that Bennett was decided before the Supreme Court's decisions in cases like Mullenix v. Luna, Plamas v. Ricard? Yes, I also think that makes a difference. And although the Bennett court mentioned the Broussard case, the case was new, and the court still used the general Garner language in the Bennett case. And again, we don't think that this case deserves that. We think that the inquiry for this case, given the uniqueness of what happened here, should be crafted to the unique facts that exist in this case and does not deserve the general Garner language. Let's get into that for a minute, because clearly the Supreme Court has admonished lower courts to not define the right at too high a level of generality. The court's done that time and again. But exactly how specifically are we supposed to define it? Did you define it as a schizophrenic man who's violated a protection for abuse order, who's training a gun on his own head 15 feet away from an officer hiding behind the door of a car? Is it that level of specificity or something not quite that specific? Well, I would define it as such, Your Honor. There was no existing precedent that placed beyond debate the conclusion that firing two rounds at a suspect who had a gun in his hand, pointed at his own head, standing only a short distance away from the officer, and who refused to drop the gun after twice being ordered to do so, violated the Fourth Amendment. We think that based on those facts, that would establish that there was no controlling precedent to govern Chupo Bartel's conduct on the day that deadly force was used. What about other facts? I mean, there are other facts that he was reportedly off his medicine and he was violating domestic relations temporary restraining order. Do those matter at all or are those irrelevant to the clearly established analysis? Well, there is no special provisions for anyone who may be mentally unstable regarding the use of deadly force. It is still the law as established by Graham v. Conner of whether that suspect poses an immediate threat, whether that person is taking medication or not. So it would not weigh into the officer's decision as to whether deadly force is appropriate. Thank you, Mr. Freeman. We'll hear you on rebuttal. Thank you. Mr. Sterling. Take your time, Mr. Sterling. Is the season. And there's some there's also water there. Might want to get some water. Take as much time as you need. This courtroom is a little smaller than the one next door, so it gets a little warmer. We believe that the facts as presented in this case are disputed the material facts. The issue is that what happened at the time? What did he know? What happened? We are in dispute in regards to the entire transaction. So, therefore, Mr. Freeman's statement that there's no facts in dispute is absolutely erroneous. The facts are that Officer Bartel did not know anything about he did not see the restraining order. He did not look at the restraining order, which the judge knew at the below. He basically asked to go to the scene. There were other officers already dispatched to the scene. He stopped at Willie's mother's house on the way to look for search for Willie Gibbons. Initially, there was a complaint made that Willie Gibbons, as we know by the facts, Willie Gibbons was at Angel Stevens' house. There's an issue as to whether there was a gun involved or not because the state dispatch was the first person, the first anyone who mentioned a gun that particular day. You're clearly correct, Ms. Sterling, that there are facts in dispute. Yes. But let's focus on the facts that aren't in dispute. So why don't you tell us what everyone agrees happened and then tell us why the officer is not entitled to qualified immunity based on that bundle of facts. Well, your Honor, what we know happened is that from two, there are two officers supposedly on the scene. There are three witnesses, your Honor. There's a Joanne Lehman who lives right there and her house is right next door. There are two officers, Officer Bartel and Officer Konza. Officer Bartel gives a statement that when he first was questioned, that he pulled up, he saw Willie. He engaged Willie in conversation and he jumped out the car. He saw Willie having a gun to his head and he shot Willie within seconds. He said he might have said something to Willie like drop the gun. That's what he said. That's what Officer Bartel stated in his statement. Officer Konza said he didn't see any interaction between Bartel and Willie. He said he saw Bartel drive up, get out the car, and shoot Willie within seconds. He thought he heard Bartel say something to Willie. He doesn't know what Willie said. Joanne Lehman said she was looking out her window. She heard a pop. She looked up. She saw one officer, no other car, just one officer over Willie Gibbons asking Willie are you okay or something. So we have three different versions of what happened. Well, I don't see any necessary inconsistencies in those stories. When the second officer says, well, I don't know what was said, that doesn't mean that what Bartel said was said didn't happen, right? There's nothing to contravene Bartel's testimony that he told Gibbons to drop the gun, right? Well, Your Honor, there is not. But he did say initially he didn't really know what he said, and that's not the story. But, yes, we'll say that if we even agree, Your Honor, that he told Willie Gibbons to drop the gun once. He shot him within seconds. And then here's where we are. But he testified, Your Honor, that he had no fear of his life. If we get the testimony that Konza was not there, the only person's life that was in danger at that moment was Willie Gibbons' life and no one else's life. Unless, within a split second, Gibbons takes the gun away from his own head and points it at Bartel. Is it your argument that clearly established law requires that an officer faced with an armed suspect has to wait until the suspect points the gun at the officer before the officer shoots the suspect? Well, Your Honor, that's not what I'm saying. I think what I'm saying is that there should be some sort of – the issue is fear. There must be some sort of level of fear or something to trigger that. Well, I suggest the issue is whether there's clearly established law, because this is not just a question of equity and what's fair. This is a question of whether the officers are on notice that their behavior might contravene the Constitution, and that requires clearly established law, right? So what I'm challenging you on is what case or cases say that in this circumstance, this type of circumstance, it violated clearly established law for Officer Bartel to use deadly force? Well, Your Honor, I think New Jersey law in regards to the use of deadly force states how an officer can use deadly force, and it said in regards to the Attorney General guidelines. We also have even the Pauley case that came down from the Supreme Court. Those facts were very specific. Which case? Pauley, the White case, Pauley v. White v. Pauley case. Well, you seem to rely heavily on Tennessee v. Garner, don't you? We did, and we also relied on Bennett, Your Honor. But how does – in Tennessee-Garner, you have an unarmed youth who was suspected of committing a property crime shot while fleeing, right? Yes, Your Honor. So how do those facts have any relation to this case where we don't have a youth, we have an adult? We don't have an unarmed man, we have an armed man? Not only armed, but the report was that he had violated a PFA, right, or a stay-away order. So how are these facts similar enough to Tennessee v. Garner for that case to help you? Well, Your Honor, I think we relied most on the Bennett case that was from the circuit. We did rely on Tennessee v. Garner because it was established in terms of shooting someone. And Bennett, we decided in 2000 – a panel decided that non-presidential opinion in 2005, I believe. But in 2018, the Supreme Court decides Casella v. Hughes. In 2015, it decides Mullinex v. Luna. In 2015, it decides San Francisco v. Sheehan. Yes, Your Honor. All of those cases seem to go Mr. Freeman's way, don't they? No, Your Honor. I beg to differ, Your Honor, respectfully. I think that in all those cases, we had a suspect that posed a threat to someone else. One was a neighbor, one was a social worker, one was a police officer themselves. There was not a situation where there was an active – there was statements made by those suspects. Mullinex v. Luna, he's a motorist, right? Yes, Your Honor. And I believe the shooter in that case, the officer was Chad Mullinex. He was instructed by his supervisor to stand down, right, and not do anything. He's on an overpass, and he shoots and kills, and the Supreme Court says he's qualified immediately, right? Well, Your Honor, I think that in that case, the car was called a deadly weapon, and so there's a difference in terms of – So you think the car that Luna was driving is more of a deadly weapon than the loaded gun that Mr. Gibbons is holding, brandishing in this case? Your Honor, I don't think – Your Honor, that's another issue. I do believe – I think it's not more, but I do believe that in those cases, there was an issue of some act by the suspect, some overt something else than just standing there trying to shoot themselves. Your Honor, this is equated. I mean, if you – a suspect that's supposedly – he is schizophrenic, and it was established that he was. The issue was he had not taken his meds. I don't think that's established. His mother did not say that. But the point is that what was there at the officer – at that moment, we have a suspect that did nothing more than say, stay away from me, and within seconds, he was dead. So in this situation, these facts are completely different than all those other cases because, yes, there was a gun involved. There was no brandishing of the gun. But if – that doesn't help you if they're different because it's your burden to show that there's clearly established law that demonstrates that Bartelt cannot use deadly force in this type of circumstance, right? That's the legal regime, right? Yes, Your Honor. We know – and that's true. However, we do believe that – I know you said Bennett was decided before, but Bennett – the facts of Bennett, nothing the Supreme Court has done has really changed that fact. And with the New Jersey – So let's just say this. One thing that the Supreme Court's done is the Supreme Court no longer adheres to the Garner formulation as far as level of generality. So one of the things that you have been saying is that there's facts in these subsequent cases that are different from these current facts. Yes. But the reason that there has been a focus on those facts is because the Supreme Court no longer tolerates the expression in Garner of such a broad level of the clearly established right. So at a minimum, I think, if I'm hearing what you're implicitly saying, is the Garner formulation that an officer may not use deadly force is too – unless the officer reasonably believes there's a risk of threat. That is too general a formulation. And so now what it seems that your task is is to say that you can offer some more narrow formulation, and what you have to do with that more narrow formulation is make it more narrow so it's not overbroad, but also show that it fits the facts of this case and that some other case says that those – that that formulation that fits the facts of this case is clearly established. And so that's what it seems like your task is as I formulate it. Yes, Your Honor, that's what I'm trying to say. And so then the real question is what is that case that says that we've got a more narrow formulation that fits the facts of this case that has also got case law support showing that it's clearly established. And so the question is where is that case, that clearly established case? Well, that's – Your Honor, we have been – I think, Mr. McKeon, let me just get – sorry, Your Honor. I think the case that we're – and forgive me, Your Honor, like I said, I've not been – I think what we're saying, Your Honor, is just what you said, that there is – I mean, the other cases that have been established, they were done – the Supreme Court's decisions have come down in terms of shooting a suspect that has sort of mental issues. Many of them have been there. So we have to accept that as fact. The issue then becomes, to some extent, now do we have cases that – are we saying that some of these cases are so fact-specific that at a certain level, when there are material disputes in terms of the facts specificity, should it be then sent to a jury in terms of reasonableness of the officer? And that's where we are in terms of the next fraud. So the issue is that when do we – if that's the case, then, Your Honors, we will never establish at some point when an officer will be liable for shooting any suspect. Because in this situation, we have facts that are pretty innocuous. I mean, we don't have facts that would lead to any sort of threat or anything to allow an officer to say, well, I had some fear or anything else. This is like saying to anyone that when you come upon a suspect with a gun or with any deadly weapon, you can shoot them. Well, your point about this leads to kind of the non-development of the law because if we just look for what's clearly established and never resolve the constitutional question, then we're just resolving what's not clearly established without answering the underlying question. But the Supreme Court said that, no, order doesn't matter. We had about seven years following Saussure where you had to go in one order, and then Pearson comes along and says you can pick. And it seems that courts tend to pick oftentimes the clearly established prong because it allows for very coherent legal analysis of measuring facts of the case against clearly established law. So assuming that we're in the clearly established regime, what is the case that says it's clearly established? Forgive me for doing it this way. We are co-counsel in this case. I didn't mean to just interrupt. Did you reserve time for argument? My minutes say that Ms. Sterling is arguing for 15 minutes. I think I have one. You know what, Judge? I thought we had, and if it's my mistake, I'll do it. Yeah, you have to do that ahead of time. I'm sorry, Judge. Okay, sorry. I guess, sorry, let me just pull it up. I think what you're asking me is clearly established law. What is the clearly established law under which we are assuming that you have the right to do this? And I still would argue on it that even though Bennett was decided before that, Bennett still allows you to look at these facts because they're very similar to our facts of this case. Is a non-precedential opinion of a circuit court clearly established law for purposes of qualified immunity analysis? No, I guess you're right. Or is it just persuasive? It is persuasive, Your Honor. So it's not controlling. If it's not controlling, it's not clearly established law. But, Your Honor, I'm in the case where you have a situation where the law is very, where we have a case. Under this situation, Your Honor, I'm just wondering if you have the Supreme Court that said we must be more specific in regards to looking at these cases. And we have facts of this situation which allows you, it says you, the circuit court. I mean, the Federal Third Circuit Court must look at these facts and determine whether the officer is entitled to immunity based on these specific facts. That's what it says. It doesn't say that you don't have to follow it or try. And that's what they ask you to do. So we now have presented facts to you that are in dispute to some extent. And you might not find them in dispute because they're very narrow. But we have people on the scene that have said these things did not occur. So we would have to agree that every fact that was given to you by Officer Bartel are facts that would allow you to decide that he did everything he was supposed to do, and therefore he's granted immunity. And our argument is that's not exactly the case, Your Honor. So that's where we are. So in reality, do we have a case? We have the, we don't have a case on point to say, well, you know, I mean, we did give you some cases, Your Honor. I don't know if on our brief, we did present some cases to you in our brief. I don't know if you, I'm sure you've looked at the cases to be presented. I'm not sure if any of those cases you found them to be persuasive. However, under the circumstances, we do believe that Officer Bartel, based on the different statements, the fact that this was a situation where there was nothing else done. We have Joanne Lehman saying there was one car there. There's facts that lead us to believe that this is not something that would allow the court to grant immunity under these conditions without saying to ourselves, to us or to the circuit, to allow this to go to a jury to determine the reasonableness of this officer's conduct. Because that's what we're saying. Thank you, Ms. Furman. Thank you. We'll hear Mr. Freeman's rebuttal. Thank you, Your Honor. Regarding whether one case can serve as controlling authority, even the Supreme Court has expressed some skepticism as to whether one case can serve as controlling authority. And I also would like- One circuit case. One circuit case. That is correct, Your Honor. One Supreme Court case will do the trick. That's the advantage of being at the high court, I guess. In terms of what Trooper Bartelt knew, it was reported over the radio, over the state police radio, that he had violated a restraining order. So Trooper Bartelt was fully aware of that. And he didn't have to see the restraining order to have known that the restraining order, that he violated the restraining order by going to her house, arguing with her and brandishing a gun. And Ms. Sterling mentioned earlier two versions, what Joanne Lehman saw and her version and Trooper Conzo's version. Well, if they are a conflicting version, it should not be recognized by this court because, you know, it's just a plaintiff's version. And when you look at the facts that are not- We don't accept the defendant's version either. Well, we just throw that out. That's not part of the evaluation. Anytime there's a disputed issue of fact, it's not part of the qualified immunity evaluation- That is correct. At this stage of the case. That is correct, Your Honor. Isn't that the tension with your position? Because as you want to have a more narrow and more tailored definition of a clearly established constitutional right, you have to tailor that to the facts of the case. And so as you begin to tailor that down to facts of the case, that runs into the problem that your opposing counsel talks about, that more and more of those facts, as you get more narrow, become more and more in dispute. And we don't have jurisdiction when it comes to facts in dispute. So it seems like what your task is, is to formulate a version at a level of specificity that also doesn't involve facts in dispute. That is correct, Your Honor. But the unique aspects about this case is that you only have one version of what happened at the scene. There are only two witnesses to this shooting, and that consists of Trooper Bartelt and Trooper Conza. And what happened prior to the shooting, those facts are certainly not in dispute. And it's the culmination of what happened prior to the shooting and what Trooper Bartelt's observations were at the scene that formulated his belief that Gibbons posed an imminent threat. With those facts, we think that those facts are sufficient for the court to determine if the law was clearly established, even if those facts are tailored as instructed by the Supreme Court in White v. Pauley and Mullinex v. Luna. Thank you, Mr. Freeman. Thank you. Thank you, Ms. Sterling. We'll take the matter under advisement.